# JACOB KELLY, impleaded, etc.,

*v.*

# HARLAN P. KELLOGG *et al.*

79  477
29a 428
79  477
63a 484

1. MECHANIC'S LIEN—*when notice should be given to owner in order to make him jointly liable with contractor.* Where materials are furnished to a builder, and used by him in a building being erected by him for another, and no time is agreed upon when they shall be paid for, and by the customary usage of trade all such bills become due and payable at the end of each month, then, in order to make the owner jointly liable with the builder, under the 5th section of the Mechanics' Lien Law of 1869, the party furnishing the materials must serve the notice required by the 2d section of the act within twenty days after the last day of the current month during which the materials were so furnished.

2. In the absence of any special contract or fixed custom of trade to the contrary, the law will imply that payment should be made on the delivery of articles purchased; and in order to render the owner of a building jointly liable with the contractor, under the 5th section of the Mechanics' Lien Law of 1869, for materials furnished to the contractor and used in such building, under a contract between the contractor and material-man to furnish such materials as needed, the notice required by the 2d section of the act should be served on the owner within twenty days after the last item of the material is delivered.

3. SAME—*liability of owner can not be extended by extension of time of payment to contractor.* In order to render the owner of a building jointly liable with the contractor for material used in the erection of the building, under the 5th section of the Mechanics' Lien Law of 1869, the notice provided for in the 2d section of the act must be served on him within twenty days after payment should have been made therefor, and it is not in the power of the contractor and material-man, by a contract, to extend the time of payment, and thus extend the statutory liability of the owner without his knowledge or consent.

4. CONTRACT—*construction.* A contractor who had taken a contract to erect a building, and given security for the performance of his contract, ascertained that he could not complete the work, and, upon notice thereof being given to his surety, an agreement was made between the contractor and his surety on the one side, and the owner of the building on the other, by which the owner agreed to pay such bills for materials which might be purchased by the contractor with which to complete his contract, as should be certified by the contractor, the surety and the architect, upon the guaranty of the surety to reimburse him for such payments: *Held,* that this contract did not create any joint liability as between the

contractor and owner, and that no joint action upon it could be maintained against them for materials purchased, and that the owner had no authority, and was under no obligation, to pay any bill for material not certified by the surety.

5. ABSTRACT. If that which purports to be an abstract contains the questions propounded and the answers of the witnesses in full, it is, in no sense, an abstract of the testimony, but is in direct violation of the rules of this court, and the party furnishing it will be allowed no costs for printing it.

APPEAL from the Circuit Court of Cook county; the Hon. HENRY BOOTH, Judge, presiding.

Messrs. SHERWIN & SPRINGER, and Mr. JOHN J. HERRICK, for the appellant.

Messrs. BARBER & LACKNER, for the appellees.

Mr. CHIEF JUSTICE SCOTT delivered the opinion of the Court:

Unless appellant is jointly liable with Miller, under the 5th section of the Mechanics' Lien Law of 1869, the present judgment can not be maintained. The alleged contract, made between Miller and his securities and Kelly, by which the latter agreed, upon the guaranty of the sureties to reimburse him, to pay such bills for materials as he should purchase, with which to complete his contract, as should be certified by Cochrane, Miller and Sinclair, by no fair construction created any joint liability for the goods, as between Miller and Kelly. Whatever obligation arose out of that agreement was several, and no joint action upon it could be maintained against Miller and Kelly for materials purchased.

No question is made that the materials got of plaintiffs were used by Miller in constructing the buildings under his contract with Kelly. The goods consisted of hardware, and were furnished, as needed, in the months of December and January—the larger portion in the former month. The last item of the account seems to have been delivered on the 17th day of January.

All the goods obtained were charged to Miller, the contractor for Kelly's houses. Nothing was said between the parties, when Miller commenced getting the goods, as to when they should be paid for. The proof tends, however, to show, all bills, according to the custom of trade, would mature in thirty days—that is, at the end of every month, whether the last item of the account had stood thirty days or not. Custom or usage made all bills for materials bought during any one month, no matter at what time, become due on the first day of the next ensuing month. Accordingly, a bill was rendered on the first day of January for all December purchases, but, at the request of Miller, the time of payment seems to have been extended one month, during which period it was expected he would have procured all the materials needed to complete the work.

Miller having failed to pay for the materials furnished, notice of the default was given to the owner of the buildings, with a view to fix his statutory liability. In order to charge the owner jointly with the contractor, under the 5th section of the act of 1869, it is provided, in the 2d section of the act, the person performing the labor or furnishing the materials shall cause a notice to be served upon the owner, within twenty days after the completion of the contract, or within twenty days after payment should have been made. This was not done in this case. No notice was served upon the owner by the material-men of their claim, until the 17th of February. That was too late to fix the owner's liability, under the 5th section of the statute. No goods were delivered after the 17th day of January, which was more than thirty days before the service of notice. Clearly the notice was not in time, if the goods were to be paid for upon delivery. But when should payment have been made? In the absence of any special contract or fixed custom of trade to the contrary, the law would imply payment should be made on delivery of the articles purchased. According to plaintiffs' own testimony, they obligated themselves to let Miller have

all the goods in their line he might need to complete the buildings. It would seem to follow, the contract was not fulfilled until the last item was delivered, on the 17th of January, and if so, that was the time when payment should have been made for the materials. Adopting this view, the notice was too late to fix any liability, under the statute, upon the owner of the buildings. But if we should adopt the other theory, that the goods, according to the custom of trade, were to be paid for at the end of every month, it would be fatal to the present judgment. Much the largest portion of the materials were delivered in December, and the bill rendered ought to have been paid on the first day of January, in the usual course of business. It was not in the power of plaintiffs and Miller, by a subsequent agreement, to extend the time of payment another month, and thus extend the statutory liability of the owner for that period, without his knowledge or consent. Could the material-men and the contractor, by a secret agreement, be permitted to extend the time of payment, after other rights had attached, for one month, they might, with equal propriety, do it for an indefinite period, to the great detriment of the owner of the buildings. It was neither lawful nor just for them to do so. *Brown et al.* v. *Moore*, 26 Ill. 421.

Although not necessarily involved in the present decision, it may be proper for us to state our views as to what obligation rests upon Kelly under the alleged agreement to pay for such materials as Miller should purchase, with which to complete the buildings under his contract. When it was discovered Miller would not be able to complete the work, notice was given to Sinclair and Moore, his sureties for the performance of his agreement. A meeting was had, when it was agreed, in consideration that Sinclair had given Kelly his note for $3000, to secure him against loss, that he would pay all bills for materials bought by Miller to be used in the buildings, as should be certified by Cochrane, Miller and Sinclair. This was simply an arrangement adopted to enable

Miller to comply with his agreement, and not an enlargement of the original contract. Under this arrangement, whatever loss there might be would fall upon the sureties of the contractor, and not upon the owner.

But Kelly could only pay such bills as should be certified in the manner indicated in the receipt given for the note deposited as collateral security for the undertaking, viz : by Cochrane, Miller and Sinclair. This clause in the agreement was, no doubt, for the benefit of the sureties. It was then known the ultimate loss that would be sustained would fall upon them, and it was a precautionary measure, adopted for their protection, that all bills should be certified by Sinclair, as well as by the architect and the contractor, before Kelly would be authorized to pay them. Had no restriction been laid upon Kelly, he might have paid bills contracted by Miller to an unlimited extent beyond anything that could have been anticipated, and sought to hold the sureties responsible. No doubt this was the very thing they contracted against, and the sequel shows it was a wise restriction.

Without expressing any opinion upon the question whether the contract made between the parties was such an one as a third party, who had furnished materials to the contractor, could sue upon it, it is sufficient for our present purpose to say, the bill for goods which plaintiffs seek to enforce in this action was never certified by Sinclair, and hence Kelly had no rightful authority to pay it, nor was he under any legal obligation to do so.

What Cochrane may have said to plaintiffs, either before or after the goods were delivered, as to the responsibility of Kelly for them, is a matter of no consequence. He had no authority to bind Kelly in the premises, nor was it any part of his duty as architect to make purchases on the credit of defendant. It was nothing more than would have been the act of a mere stranger intermeddling with that which did not concern him.

Appellant has filed no abstract of the testimony, in accordance with the practice established in this court. That which purports to be one, is, in no sense, an abstract of the testimony. The questions propounded and the answers of the witnesses are printed in full, in direct violation of the rules of this court. Appellant, therefore, will be allowed no costs for printing what is called an abstract in the case.

The judgment will be reversed, and the cause remanded.

*Judgment reversed.*